WOLFLEY et al. *v.* LEBANON MINING CO., OF NEW YORK.

1. Section two of the act of Congress of July 26, 1866, clearly permits the patentee of a lode mining claim to follow the lode in its descending course to any *depth,* although in its downward trend it is carried by dips, angles and variations, into the adjoining land.

2. The surface ground and the lode are not independent grants. It is not the purpose of the act to grant surface ground without a discovered lode. The lode is the principal thing, and the surface ground incident thereto.

3. A lode claim is to be fixed by reference to the plat or survey of the location, and although the lode in its descending course may be followed to any depth with its dips, angles and variations, into the premises adjoining, yet in its onward course or strike it may not depart from the line of its location, and the patentee is not entitled to its possession beyond the lateral boundaries, as against one who has subsequently located and patented it. If the patent is broader than the law, it is to that extent nugatory.

4. The notice required by the statute, to be given by the register of the Land Office, as well as by the claimant, is in effect a summons to all adverse claimants.

5. As long as the local laws are not in conflict with the laws of the United States, they are of binding force and must be observed, but the act of Congress cannot be subordinated to the local laws, rules or customs, and it is in the light of the provisions of the act of Congress that every patent issued in pursuance thereof must be construed.

*Appeal from District Court of Clear Creek County.*

AT the trial in the court below the appellee relied on title derived by discovery, pre-emption and several mesne conveyances from the alleged pre-emptors, to Harris, the discoverer, and from him to Brown. Brown obtained a patent from the government and conveyed his interest to the appellee. The patent contains the following language : " it being the express intent and meaning of these presents

to convey to the said J. Warren Brown, his heirs and assigns, only the eight hundred (800) linear feet of the Ben Harding lode, with surface ground hereinbefore described, *commencing at the center of discovery shaft on said lode and extending thence westerly eight hundred* (800) *linear feet, along the course of the vein,* the same being known as claims Nos. 1, "etc.,     *     *     *     *     *     " with the right to follow said Ben Harding lode or vein, to the distance of eight hundred (800) linear feet, with its dips, angles and variations, to any depth, although it may enter the land adjoining."

Mr. L. C. ROCKWELL and Mr. JAMES B. BELFORD, for appellants.

Messrs. H. M. & W. TELLER, for appellee.

THATCHER, C. J.   This was an action of ejectment brought by appellees against appellants to recover the possession of eight hundred feet of the Ben Harding lode.   The declaration contained three counts, in the first of which the appellee claimed title in fee, and in the second and third it claimed title by pre-emption, occupation, possession and purchase under and by virtue of the local laws, customs and usages of miners in Griffith mining district, the laws of Colorado and those of the United States.   In support of the second and third counts, much evidence was introduced, which, however, the court charged the jury to disregard in the following instruction :

"After the issuing of the patent, all previously acquired rights by the patentee under the local laws, usages and customs of the particular district in which the claim is located, are merged in the patent, and the plaintiff having put in evidence a patent from the United States, you must not consider the right or title acquired prior to the issuing of the patent, such rights being merged in the patent."

Whether this instruction correctly lays down the law we need not now decide.   It could not prejudice the defendant.

VOL. IV—15

It is enough to say that by this instruction the jury was necessarily confined to the issue made upon the first count. By their verdict they found that the plaintiff was the owner in fee of the property described in the declaration. This verdict was responsive only to the first count.

The evidence tended to show that the Ben Harding lode in its onward course or strike departed from the vertical side lines of the location as described in the patent and represented by the plat incorporated therein, and entered the Bell tunnel lode location, which was patented under the act of Congress of May 10, A. D. 1872. That the plaintiff had the right to so follow the patented lode was affirmed in the instructions of the court. Upon this theory the case was tried. To determine its correctness reference must be had to the act of Congress of July 26, 1866, under which the Ben Harding lode was patented.

At common law a grant of land carries with it all that lies beneath the surface down to the center of the earth. At his pleasure the owner of the soil may apply to his own purposes whatever is included in the segment of the earth carved out by his descending exterior boundary lines. Says Sir WILLIAM BLACKSTONE (Book 2, page 18): " *Cujus est solum, ejus est usque ad coelum* is the maxium of the law ; upwards therefore no man may erect any building or the like to overhang another's land ; and downward whatever is in a direct line, between the surface of any land and the center of the earth, belongs to the owner of the surface, *as is every day's experience in the mining countries.*" By the rules of the common law, except so far as such rules have been modified by statute, must the extent of the plaintiff's patented grant be determined. That there may however be a grant of mineral separate from the grant of the circumjacent land, and *vice versa*, where the grantor manifestly intends that each shall form a distinct possession and different inheritance, admits of no doubt. The question recurs : What did Congress, by its declared will in the act of 1866, authorize the United States to grant ? In the light

of a just interpretation of this act, must the Ben Harding patent be construed.    If the patent is broader than the law, it is to that extent ineffectual.    Based upon the statute, its validity, and the extent to which it operates as a conveyance, must be determined by reference to the statute.

Section two provides that it shall be lawful for the claimant of a vein or lode "to file in the local land office a diagram of the same so extended laterally or otherwise as to conform to the local laws, customs and rules of miners, and to enter such tract and receive a patent therefor, granting such mine together with the right to follow such vein or lode, with its dips, angles and variations *to any depth*, although it may enter the land adjoining, which land adjoining shall be sold subject to this condition."

This section clearly permits the patentee to follow the lode in its descending course to any depth, although in its downward trend it is carried by its dips, angles and variations into the adjoining land.    Here is a departure from the common-law doctrine.    The qualifying words, however, "to any depth," limit the direction in which the mine may be pursued beyond the side lines.    The claimant is required to file in the land office a diagram of his vein or lode.    This is his own act.    The law contemplates that before he prepares his diagram he shall so far expose and develop the lode as to be able to trace its course.    The position that if the plat made by the surveyor does not cover the lode, the patentee should be permitted to so shift the lines of his patent as to include the lode which he before, through inadvertence or ignorance, failed to properly locate, is, it is conceived, without force.    The error is not the mistake of a government officer, but the mistake of the claimant, and others ought not to be permitted to suffer by it.    It is not the province of the surveyor to either discover or determine the course of the vein.    He acts under the directions of the claimant of the mine who has already furnished a diagram of his lode.    His duties are to survey the located premises and make a plat thereof, indorsed with his approval, desig-

nating the number and description of the location, the value of the labor and improvements and the *character of the vein exposed*, See § 3. However tortuous might be the course of the lode, the claimant had a perfect right to follow it up and prepare his diagram so as to include it, together with the surface ground on each side thereof allowed by local laws. There is no language in the act that requires the diagram to be in the form of a parallelogram, or in any other particular form.

From an examination of the entire act it seems to us that the central idea of a mining location under its provisions is, that there must be a discovered lode within it whose *locus* in its onward course or strike is embraced by its boundaries.

An assumed mining location, which, in fact, contains no mine, would be wholly false, and would contravene the law. Until a patent issues, to the extent only in its onward course that a discovered lode is within the prescribed exterior boundaries of the claim, is the location itself unassailable. *Patterson v. Hitchcock*, 3 Col. 533. The surface ground and the lode are not independent grants. It is not the purpose of the act to grant surface ground without a discovered lode. The lode is the principal thing and the surface ground incident thereto. In conveying a segment of the earth located under the provisions of the act it is the intention of Congress to convey a mine contained within that segment as the substance of the grant.

The act appeals to the industry and enterprise of the miner to make sure that the lode is within his location. The higher his diligence in this respect the greater will be his reward. If by lack of assiduity and energy he makes an untrue location — a location not embracing the lode he seeks to secure — he cannot be heard to complain that others have explored and occupied the adjacent territory and discovered therein a lode which might have been embraced in his diagram. If, as the evidence tends to show, the Bell tunnel lode is but a continuation of the Ben Hard-

ing lode (after its departure from the vertical side lines), extending through the adjacent location, upon what principle of justice or of law in the absence of an express statutory provision, can the patentee of the lode last named, claim the right to encroach upon the premises embraced by the Bell tunnel lode location and deprive the owner thereof of the fruits of his discovery ?

Before a claimant is entitled to a patent under the act of 1866 a compliance with its provisions is indispensable. It is necessary that a diagram of the lode claimed shall be filed in the local, land office. Notice of the extent of the claim must be given to the world by posting such diagram in a conspicuous place thereon, together with the declaration of the claimant's intention to apply for a patent. The register of the land office is required to give a like notice by publication in a newspaper and by posting in his office for a period of ninety days, which is in effect a summons to all persons whose interests may be affected by the issuance of a patent in conformity with the diagram. to appear and file an adverse claim.

If, after the expiration of ninety days, no one appears to contest, the surveyor-general, upon application of the claimant, is required to survey the location and make an approved plat thereof, and designate the number and description of the lode, the value of the labor and improvements, and the character of the vein exposed. For what purpose must these several acts be done? Do they not point with certainty to a segregation from the public domain of a described tract embracing a lode? If they have any significance, we are constrained to the conclusion that one of their leading objects is to require that the claimant shall, before applying for a patent, ascertain the exact location of his lode, and fix that location by his diagram so that the public may be apprised of the limits of the lode location, and may thereafter, with safety, explore and occupy adjacent tracts.

It is apparent that within the meaning of the act the lode

claimed is to be fixed by reference to the " plat and survey " of the location, and although in pursuance of its provisions the lode in its descending course may be followed *to any depth*, with its dips, angles and variations, into the premises adjoining, yet, in its onward course or strike, it may not depart from the line of its location.

It is, however, insisted that if not by the literal terms of the act of July, 1866, then by virtue of territorial legislation ' and local customs and rules of miners, the patentee was entitled to follow the course of the discovered lode, whether it was comprised within his location or not; that one of the purposes of the act of Congress was to recognize and confirm mining rights and titles as they existed under local laws and customs; that whatever may be the true construction of the act as to locations made subsequent to its passage, as to locations made prior thereto, it authorized the issuance of a patent for a lode located in conformity with the rules and customs of the mining district in which it was situated, even though it might depart in its linear course from the lateral boundaries of the described premises.

The act declares that the mineral lands of the public domain are free and open to exploration and occupation, subject to such regulations as may be prescribed by law, and subject also to the local customs or rules of miners in the several mining districts, *so far as the same may not be in conflict with the laws of the United States.* Before the passage of this act, with the view to protect the miner in the occupation of the public domain, although he was technically a trespasser as against the United States, the courts held that as between him and a third person, he might be considered as being in possession, with the assumed assent of the owner. But by that act the assent of the United States to the exploration, occupation and purchase of mineral lands of the public domain, is expressly declared. Under its provisions, the miner having located his claim, is to be treated as an express licensee of the United States,

and, independent of a purchase from the government of his mining claim, he has, upon compliance with the terms of the act, a right to appropriate the minerals therein contained. A title in fee, by patent, is offered him, which he may, at his pleasure, accept or reject. By the statute, his rights are circumscribed and determined. The act of Congress, from which they spring, is paramount to all local laws, rules and customs. The first section of the act, we think, leaves no room for doubt on this point. As long as they are not in conflict with the laws of the United States, they are of binding force and must be observed. But the act of Congress cannot be subordinated to the local laws, rules and customs. It is in the light of its provisions that every patent issued in pursuance thereof must be construed, and we cannot, therefore, admit that any such patent can, by virtue of local laws and customs, transfer to the patentee any greater interest or estate than that which the paramount law warrants.

In the case of *Chapman* v. *Toy Long*, 4 Saw. 34, the court commenting upon the rights of the miner upon the public domain, since the passage of the act of 1866, and subsequent acts upon the same subject, says: "But under the mining laws of the United States now in force, the locator of a mining claim, as to the right to the possession of the premises and to appropriate minerals therein, becomes and is the assignee, [licensee], of the United States so long as the law remains in force and he complies with the conditions imposed by it. Until Congress withdraws this license by a repeal of the law, the right of the locator to the possession of his claim and to appropriate to his own use the mineral deposits therein, is full and complete, and he need not take any steps to purchase the land or obtain a patent for it. That is a matter left to his own option or sense of self-interest."

There is no time prescribed within which he shall apply for a patent. Ample opportunity to ascertain the precise *situs* of his lode with reference to the contiguous land is

given him. The surface and the lode are both the subject of the grant. The patent operates to convey not only the circumscribed tract of land which, under the claimant's direction, has been platted, but also the lode contained therein, with the right to follow the same in its downward course into adjoining premises, but not to follow it when, in its onward course or strike, it departs from the vertical side lines. In the latter case, after its departure, it is the subject of location by whomsoever it may be discovered.

If then, as the evidence tends to show, the ledge, on which the Ben Harding lode was located, deflected in its onward course or strike from the patented side lines, the patentee is not entitled to its possession beyond his lateral boundaries, as against one who has subsequently located and patented it.

Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*