# WILLIAM S. McCORMICK, Appellant, v. E. M. VARNES et al., Respondents.

1. Local Mining Laws.—Congress has given the local laws and customs of miners the force and effect of laws, so far as they are not in conflict with any superior law.

2. Location of Mining Claim.—The notice of location is presumed to refer to the surface ground as well as to vein or lode located—and if the latter are held by the notice of "location," that must be along the general course or strike of vein.

3. Act of Congress—Surface Ground.—It is clear that the Government did not intend, by the act of Congress of July 26, 1866, to authorize the miner to locate, or itself to grant, two separate and distinct estates in a mining location, one in the surface ground, and the other in the vein or lode, whenever the latter might be found to run in its course, without regard to the surface ground.

4. Location Must Cover Vein, etc.—Under the provisions of sections 2 and 4, of the act of Congress of July 26, 1866, the right to follow a vein claimed under a mining location, is expressly confined to *depth*, and such act cannot by any fair construction, be made to apply to the strike or course of the vein.

5. Location Must Cover Vein, etc.—The foregoing sections of the act of Congress referred to, qualify and enlarge the common law right by which miners hold their locations, and that is to this extent only: That the owner of a mining claim may follow his lode or vein from the apex found within his surface ground, on its dip, to any depth, although in its downward course it may so far depart from a perpendicular, as to enter the land adjoining; but he cannot go beyond or outside of his side lines on the course or strike of the vein.

6. Surface Location—Side Lines, etc.—The location of a mining claim should be made along the course of the vein or lode, so as to include the same within its boundaries; otherwise, it will only secure so much of the lode or vein as it actually covers.

Appeal from the Third Judicial District Court.

The facts appear in the opinion of the court.

*Sutherland & Kimball*, for appellant.

· No brief on file.

*Bennett & Harkness,* for respondents.
No brief on file.

EMERSON, J., delivered the opinion of the court:[1]

The complaint sets up a title to the Flagstaff Mine in the appellant, and that he and his grantors have been actually in possession, continuously since before March 22, 1872; that the respondents were engaged in tortiously taking out ore from this property, and threaten to continue so to do. An injunction to restrain them from so doing was prayed for.

The respondents' answer admitted the appellant's title to whatever ground was patented as the Flagstaff Mine, and surface ground, and his possession of the mining ground in question, but denies his title to the latter, claiming that the ground in question is not within the Flagstaff patent, and not covered by the deed to the appellant, and claiming title to the same in themselves, by virtue of a location and work in accordance with the local rules and regulations of the district, and asking affirmative relief by way of an injunction against the appellant.

The appellant's prayer for an injunction was denied, and the respondents' granted. The appeal is from both of these orders.

Upon the hearing there was no dispute about the facts in the case, which are substantially as follows:

The Flagstaff Mine was located on the 19th of March, 1870. The notice of location reads as follows: "Notice is hereby given, that we, the undersigned, claim twenty-two hundred feet of this vein or lode, together with all dips, spurs, angles and variations, to be known as the Flagstaff. Course of the lode, northerly and southerly." Then follows the names of the claimants and the number of feet claimed by each, both northerly and southerly, with the notice that a certain number of claims *north*, with a like number *south*, are to be worked in company and undivided.

A patent for this claim was applied for by and granted to the

Salt Lake Mining Company, who, pending the application for a patent, deeded the Flagstaff Mining Company, the immediate predecessor in interest of the appellant.

The survey and diagram and description in the patent correspond with the notice of location, additional numbers having been subsequently located.

The respondents on the 4th day of July, 1877, located the Nabob Mining Claim, the discovery point being about one hundred and fifty feet westerly from the westerly side line of the Flagstaff claim, and running westerly from the discovery point along the general course or strike of the vein.

It is admitted " that the Flagstaff and Nabob mining claims are on the same vein; the discovery and location point of the latter, being about one hundred and ninety-one feet northwesterly from the discovery and location point of the Flagstaff, and all the work done on the Nabob Mining Claim, and all works on the vein therein, are within three hundred feet of the discovery point of the Flagstaff, and on the same vein."

From the diagram accompanying the record, it appears that the course or strike of the vein, and the course of the Nabob Mining Claim, from the point of discovery, is about north fifty degrees west, and the course of the Flagstaff claim, by their diagram, surveys and patent, is north thirty-six degrees east. That is, the Flagstaff claim is laid across the vein and nearly at right angles with it.

The disputed ground is on the course of the vein and beyond and outside of the side lines of the Flagstaff surface ground.

It is claimed for the appellant that this ground, or rather that the vein at this point, is covered by the Flagstaff patent. Or in other words, that the vein is located, held and granted, irrespective of the surface ground containing it, and that the grantee can follow it on its course outside of the surface lines of the claim. This is the point for us to decide, and is the only question there is in the case.

Congress has given to the local laws and customs of miners

the force and effect of laws, so far as they are not in conflict with any superior law.

The local law of the district, in force when the Flagstaff was located and patented, provided that "No person or company of persons, shall be entitled to hold more than two hundred (200) feet as discovery of a lode, nor more than two hundred feet for each person located, and the number of feet in all shall not exceed three thousand (3,000) feet. The surface width requisite for mining or milling purposes, or for convenient working of the same, shall not exceed fifty (50) feet *on each side of the walls of said vein or lode.*"  Art. 12 of the By-Laws of Little Cottonwood District.

Construing the notice of location with this provision of the by-laws, it is evident that at the time of the location the locators supposed that the vein or lode run northerly and southerly. All their claims were in accordance with that notion.  Nothing is said in their notice of location about the surface ground. They simply gave the direction and extent in linear feet, not of the surface ground, but of the vein or lode claimed to have been discovered, upon its supposed course or strike, depending upon the local laws for the extent of their surface ground.  That was incident to their claimed discovery.

From the language used in the by-law above quoted, which is similar to that in all other districts, except as to the *amount* which may be claimed, there would seem to be no room to doubt but that miners understood that surface ground is taken on each side and including the vein, and that when he locates and claims his surface, he locates and claims the vein or lode within it.

Is there anything in the act of Congress which enlarges or changes this claim or right?  The act of Congress of July 26, 1866 (14 U. S. Stat. at Large, p. 251), provides, "That wherever any person, or association of persons, claims a vein or lode of quartz, or other rock in place, bearing gold, silver, cinnabar or copper, having previously occupied and improved the same, according to the local customs or rules of miners in the district

where the same is located * * * may enter such tract and receive a patent therefor." * * * So that before this patent was obtained proof must have been made that they had previously occupied and improved their claim, according to the local rules and customs of miners in that district. By such rules and customs they were entitled to the claim for the length claimed, limited in its linear extent by the act of Congress, as well as by the local rules, and with surface not to "exceed fifty (50) feet on each side of the walls of said vein or lode."

It is claimed on the part of the appellant, that the act of Congress above referred to, in its second and fourth sections, gives the right to follow the vein or lode on its course, although it may enter the land adjoining, or as expressed in this brief, "that when a vein or lode is claimed, and the claimants have filed a diagram, been permitted to enter the tract, and have received a patent containing a grant according to the language of the statute, or as authorized by the statute, the vein must be granted to the extent of the linear feet located, without any statement of the direction, and without regard to the relative situation of the su.f.ce ground."

The language used in the act does not warrant any such construction.

By section two it is provided that whenever any person or association claims a vein or lode, having occupied and improved the same according to local rules or customs of miners in the district where the same is situated, and having expended in actual labor and improvements thereon not less than one thousand dollars, and there is no opposing claim, it shall be lawful for such claimant, or claimants, to file in the local land office a diagram of the same, so extended laterally or otherwise as to conform to local rules, laws and customs, and to enter such tract and receive a patent therefor granting such mine, together with the right to follow such vein or lode, with its dips, angles and variations, to any depth, although it may enter the land adjoining, which land adjoining shall be sold subject to this condition.

Section three provides for filing the said diagram in the local land office, posting the same, publishing notice of application, posting notice and diagram in local land office, final survey, etc., and also provides, "But said plat, survey or description, shall in no case cover more than one vein or lode."

Among other things, the fourth section provides "that no location hereafter made shall exceed two hundred feet in length along the vein for each locator, with an additional claim for discovery to the discoverer of the lode, with the right to follow such vein to any depth, with its dips, variations and angles, together with a reasonable quantity of surface for the convenient working of the same as fixed by local rules."

If in this connection we consider the local rules above quoted, providing that parties locating mining claims in that district were entitled to their surface ground "on either side of the walls of their vein," it will be apparent that the diagram provided for in section two of the act of Congress could only be extended laterally fifty feet on each side of the walls of the vein or lode. If extended otherwise, such extension would not be made "so as to conform to the local laws, customs and rules of the miners," as provided in the act.

The line of location includes the surface ground and the vein or lode, and "measures the extent of the miner's right." He can claim the surface ground because it is within a certain number of feet on either side of his line of location—of a vein of mineral which he claims to have discovered.

It is undoubtedly true, as argued by counsel for the appellant, that the mineral vein or lode is the valuable thing sought after by the miners. It is that which he discovers, or claims to have discovered. And when he has made his discovery, if he desires to reap the benefit of it, he must make his location in accordance with the acts of Congress and the local rules and customs of the district. The "location" refers to the surface ground as well as to the vein or lode, and if the vein or lode is held by the "location," that must be along the general course or strike of the vein.

It seems to me clear that the Government did not intend to authorize the miners to locate, or itself to grant two separate and distinct estates, one in the surface ground, and the other in the vein or lode wherever it might be found to run in its course, without regard to the surface ground.

It seems to me equally clear that the right to follow the vein given in sections two and four of the act referred to, is expressly confined to depth, and cannot by any fair construction be made to apply to the strike or course of the vein.

The object of the notice and diagram required by the act to be published and posted, was unquestionably to give notice to adjoining claimants, and to all parties interested, as to the extent of the applicant's claim, in order that they might have the opportunity to contest his right to the patent for which he was applying. And because the vein or lode is the valuable thing for which the patent is sought, this notice refers to it, as well as the surface ground, and the diagram of the surface ground must embrace the vein or lode in its general course or strike. If the construction claimed by the appellant is to be given to the act—that is, that they have the right to follow the vein or lode, although it may enter the land adjoining, then the published and posted notices and diagrams required by it furnish no information as to where the valuable thing, for which the patent is sought, is situated. And after one location was made there would be no inducement to, or safety in, prospecting or locating on other claims within a circle the radius of which is the greatest distance claimed by the first locators from their discovery point either way.

Counsel for the appellant claims that they find authority for their construction of the law, in the opinion of Judge FIELD, in the case of the *Eureka Consolidated Mining Co.* v. *Richmond Mining Co.*, 4 Sawyers, 311, and quote and italicise " *the surface land* taken up in connection with a linear location on the ledge or lode is, under the act of 1866, *intended solely for the convenient working of the mine, and does not measure the miner's right, either to the linear feet upon its*

*course*, or to follow the dips, angles and variations of the vein, *or control the direction he shall take.*" In the same connection, and immediately following the above, the learned judge says, "But the line of location does measure the extent of the miner's right. *That must be along the general course or strike, as it is termed, of the ledge or lode.* Lines drawn vertically down through the ledge or lode at right angles with a line representing this general course, at the end of the claimant's line of location, will carve out, so to speak, a section of the ledge or lode within which he is permitted to work, and out of which he cannot pass."

This language supports the view here taken by us, rather than that of the appellant. No other idea can be obtained from anything contained in the opinion, but that the location must be along the general course or strike of the vein or lode.

Unfortunately for the appellant, the locators of the Flagstaff Mining Claim mistook the direction of the vein, and made their location across it instead of along its general course or strike. The court can grant no relief from the consequences of this mistake. No vein is guaranteed by the Government to those who shall apply for a patent, but simply promises a patent to such as go upon and explore the public domain, and, having made such exploration, represent to the Government what they claim to have discovered, and where it is located.

The miner is left free to make his choice of location as he sees fit, and ample opportunity is given him to determine the situation of his lode or vein. If he makes this choice without sufficient exploration to guide him in making the location, the blame rests upon himself.

Under the rules of the common law, he would only be entitled to whatever might be over and under the surface of a segment of the earth, carved out by the exterior lines of the location extended downwards indefinitely. Sections two and four, of the act referred to, furnish the only qualification or enlargement of the common law right by which miners hold

their claims, and that is to this extent only, that they may follow the lode from the apex found within the surface ground, on its dip to any depth, although in its course downward it may so far depart from a perpendicular as to enter the land adjoining. This must necessarily be beyond the side lines of the location, because under all laws the end lines form a bulwark beyond which the miner may not go. But he cannot go beyond or outside of his side lines on the course or strike of the vein, it is only on its dip that this may be done.

The Flagstaff patented ground does not cover or embrace any part of the vein or lode on its course or strike outside of and beyond the side lines, and the appellant has no right under the patent to work in or extract ore from the disputed ground.

The orders made by the court below are affirmed, with costs.

