MONTANA ORE PURCHASING COMPANY, APPELLANT, *v.* BOSTON AND MONTANA CONSOLIDATED COPPER AND SILVER MINING COMPANY, RESPONDENT.

[Submitted October 11, 1897.   Decided December 1, 1897.]

*Mining Claims—Law of Apex—Patent.*

1.   Where an application for a patent to a mining claim expressly excludes a certain number of acres thereof included within its exterior limits, and definitely described,

and a patent is issued according to the description in the application, the patentee acquires no right to that portion of the vein having its apex in the surface ground which, although within the exterior limits of the claim, is excluded from the grant.

2. SAME—*Patent.*—A patent to a mining claim in so far as it attempts to convey the discovery lode on its strike, independently of the surface granted, is void and of no effect.

*Appeal frcm District Court, Silver Bow County. John Lindsay, Judge.*

APPLICATION by the Montana Ore Purchasing Company against the Boston & Montana Consolidated Copper & Silver Mining Company for an injunction. From an order denying such application, and refusing to grant an injunction pending the final determination of the action, plaintiff appeals. Affirmed.

Statement of the case by the justice delivering the opinion.

The owner of the Rarus quartz lode patented mining claim seeks to enjoin the owner of the Johnstown quartz lode patented mining claim from extracting ores at a point within the exterior boundaries of the latter. The history of the Rarus and Johnstown claims is as follows :

|  | Rarus. | Johnstown. |
|---|---|---|
| Location | Oct. 2, 1878 | Jan. 24, 1879 |
| Application for official survey | May 26, 1882 | April 17, 1882 |
| Survey | June 6, 1882 | May 6, 1882 |
| Application for patent | Feb. 20, 1883 | March 3, 1883 |
| Approval of survey | May 22, 1883 | Jan. 2, 1883 |
| Final entry | May 12, 1883 | Sept. 1, 1883 |
| Patent issued | June 25, 1884 | Nov. 15, 1884 |

The location of the Johnstown overlapped the surface area of the Rarus location, as illustrated by the following diagram, marked "No. 1:"

DIAGRAM NO. 1.

YELLOW SHADING

"The Rarus lode, as plaintiff contends, passes through both end lines of the location,    *   *   *   has a course from northwest to southeast, and extends on its strike perhaps through both end lines of the Johnstown location."

The survey of the Rarus claim, as approved by the Surveyor General, designated for patent lot No. 179. The survey of the Johnstown claim designated for patent lot No. 173. The patent issued for the Rarus, in the description of lot No. 179, recites as the initial corner, and the other corners in running its exterior boundaries, corners marked, respectively, Nos. 1, 2, 3, and 4. These corners, presumably, were coincident with the corners of the original location of the claim. After the description of the exterior boundary line, as aforesaid, is the following language:   "Containing 2 98-100 acres of land, more or less, and embracing 1,318 linear feet of the said Rarus lode, as represented by the yellow shading in the following plat." In the plat contained in the patent the yellow shading referred to is upon the easterly portion of the claim, and covers an area of 2.93 acres. There is also a fraction of an acre in the northwesterly corner shaded in yellow.

The following diagram, marked "No. 2," is illustrative:

DIAGRAM NO. 2.

The patent in its granting clause reads as follows:   "   *   *   *   Do give and grant unto the said ———, and to their heirs and assigns, the said mining premises hereinbefore described as lot No. 179, with the exclusive right of possession and enjoyment of all the land included within the exterior lines of said survey not herein expressly excepted from these presents,

and of 1,318 linear feet of the said Rarus vein, lode, ledge or deposit, of the length hereinbefore described, throughout its entire depth, although it may enter the land adjoining :   *   * * provided, that the right of possession hereby granted to such outside parts of such veins, lodes, ledges or deposits shall be confined to such portions thereof as lie between two vertical planes drawn downward through the end lines of said survey at the surface, so continued in their own direction that such vertical planes will intersect such exterior parts of said veins, lodes, ledges or deposits, excepting, and excluding, however, from these presents, all that portion of the surface ground hereinbefore described which is embraced by said lots Nos. 126, 172 and 173.'' Lots 126 and 172, last aforesaid, represent portions of mining claims surveyed prior to the Rarus claim, and lot No. 173, aforesaid, is the lot surveyed for the Johnstown patent.

The patent contained the usual provisions and conditions of mining patents, and then this clause of exclusion:  `` *   *   * That the grant hereby made is restricted to land hereinbefore described as lot No. 179, with 1,318 linear feet of the Rarus vein, lode, ledge or deposit for the length aforesaid, throughout its entire depth as aforesaid, together with all other veins, lodes, ledges or deposits, throughout their entire depth as aforesaid, the tops or apexes of which lie inside the exterior lines of said survey.''

The United States Receiver's receipt issued to the Rarus patentees reads as follows:   ``Received from ——— the sum of fifteen dollars, the same being in full for the surface area embraced by survey No. 179;   *   *   *   said mineral claim or lot of land   *   *   *   being known as the Rarus lode mining claim, embracing 2 93-100 acres, as shown by said survey.''

The application for a patent to the Rarus claim designates the land sought to be patented as ``an area of 12 97-100 acres,   *   *   *   excluding 9 9-100 acres embraced in lots Nos. 126, 172 and 173, not claimed, leaving 2 98-100 acres claimed by the above named applicants for patent. (That is,

the entire area of the survey is claimed, except that portion which is in conflict with the Pennsylvania lode, lot No. 172, and that in conflict with the Johnstown lode, lot No. 173.)''

The Johnstown patent, as conceded by appellant in its brief, ''conveys what was called the Johnstown lode, together with the entire surface—so far as the matter affects this controversy—included within the surface boundaries of the location.''

The surface area conveyed by the Johnstown patent was 18 acres, for which the United States government was paid $90.

Prior to the issuance of the patents to the Rarus and Johnstown claims on March 7, 1883, the owners of the latter conveyed to the owners of the former a certain portion of the Johnstown which is not involved in the present dispute.

Both appellant and respondent concur in the inference that, in order to avoid a lawsuit by reason of a conflict between the claims, and while steps were being taken to obtain patents therefor, some compromise agreement was entered into between said owners.

This is an appeal from an order of the District Court of Silver Bow county denying an application for a temporary injunction, and refusing to grant an injunction pending the final determination of the action.

*John J. McHatton, J. F. Vaile and Robert B. Smith,* for Appellant.

*John F. Forbis,* for Appellee.

Buck, J.—The vein or veins at the point where the ores are in dispute lie about 300 feet from the westerly end line of the Rarus lode claim, as located, and underneath its located surface.

Appellant contends that, even though the Johnstown owner, under its patent, acquired the surface of the ground in controversy containing said ores, nevertheless the Rarus patent conveyed all the veins whose apexes were within the exterior boundaries of that claim as originally located. It in-

sists that the surface portions of the Rarus conveyed by its patent, namely, the two areas, constituting 2.98 acres, shaded in yellow (see diagram No. 1), cannot be regarded as detached from each other so far as the official survey of the claim or the patent itself is concerned, but must be regarded as connected by the intervening ground of the claim as originally located, although the surface of such intervening ground was conveyed to the Johnstown patentees.

In other words, it is insisted that lot No. 179, as the official survey of the Rarus was designated for the purpose of patent, coincided as to its exterior boundaries with the Rarus claim as originally located, and that, therefore, the patent to the Rarus conveyed all the veins whose apexes were within the surface of its original location.

In support of its position, it also contends that, in the issuance of patents to lodes, the mining laws of the United States authorize a severance of the minerals from the surface of the ground containing them, when conflicting claims demand it.

While it is true that the surface of mining ground is often spoken of in the decisions of the courts as an incident to the vein whose apex lies within or under it, we are clearly of the opinion that the mining statutes of the United States contain no authority for the conveyance of the lodes or veins embraced in a located quartz claim independently of the surface ground connected with and containing or overlying them. Neither is the subject of patented grant by itself.

Appellant calls to our attention various expressions, occurring in different sections of the United States mineral land statutes, for the purpose of showing that the surface is not regarded as an essential incident of the lode or vein in or below it.

It is no doubt true that those statutes, taken as a whole, give greater prominence verbally to the lode or vein than to the surface connected therewith; but this naturally results from the fact that the lode is the main subject treated. Such expressions and such prominence, however, cannot avail to permit the grant of lodes or veins embraced in a located quartz

claim regardless of the surface connected therewith.   In sup-
port of this ruling, we deem it necessary to cite only from a
most valuable treatise on mines which has just been pub-
lished.

In Section 780, Vol. 2, Lindley on Mines, and Sections 58-
60, Vol. 1, *Id.*, the author most ably discusses the subject of
the relationship of the surface to the lode, and collates the
federal and state decisions directly pertaining thereto.   Want
of space alone prevents our giving his language in full.

What did the Rarus patent convey ?  Let it be conceded that
the corners and exterior boundaries of the official survey, lot
No. 179, coincide with the corners and exterior boundaries of
the claim as located.  It does not follow that the patent granted
the claim as located.   The patent is sufficiently unambiguous
to speak for itself.   If it were not, however, in the applica-
tion for a patent to the Rarus claim, lot No. 173, the official
survey of the Johnstown claim, surveyed and approved prior
to the survey of the former, is expressly excepted.   This ap-
plication asks for a patent to 2.98 acres of area only.   See
*Golden Reward Mining Co.* v. *Buxton Mining Co.*, 79 Fed.
868.   The patentees of the Rarus paid to the United States
$15 only.   The patent conveys an area of 2.98 acres and no
more.   Moreover, it expressly excepts from the grant the
Johnstown survey, lot No. 173.

In so far as the patent attempts to convey the Rarus lode
on its strike, independently of the granted surface of 2.98
acres, it is void and of no effect.   The order appealed from is
affirmed.

*Affirmed.*

Hunt, J., concurs.